Alright, Mr. Barnes. Good morning. Good morning, Your Honors. Give me a moment to organize here. I greatly appreciate that. I might have too much stuff, Your Honor. It's alright, it took me three days to organize the case. Your Honors, I've asked to reserve four minutes on rebuttal. Amicus has three minutes for us as well. May it please the Court, I'm Jay Barnes on behalf of the appellants. Your Honors, this is a case, as you are aware, about children's privacy and Amicus will discuss the legislative history and technology on the VPPA in a moment. I'd like to discuss the VPPA intrusion upon seclusion and, time permitting, the New Jersey Computer-Related Offenses Act. Do you have any binding authority in terms of the case that the VPPA defendant need not be a videotape service provider? Your Honor, we believe that, and this goes to the second question on the VPPA, is whether Google can be liable. And there is a case from another circuit to be decided by this Court. There's a case out of the District of New Jersey called Dirkus v. Bureau of Ruminate that we think gets it right. The VPPA is a remedial statute. It has broad terms. Every VPPA violation requires a recipient, and Google was a knowing and willing recipient in this case, and we think the statute covers them. Well, when Congress amended the VPPA in 2012, it did not say that a VPPA defendant need not be a videotape service provider. Now, did they, in effect, agree with the Sixth Circuit in Daniel v. Cantrell? Well, there is mixed case law. There's a District Court opinion from New Jersey that said they could be, and even if Google can't be liable... Yeah, but Daniel's a Circuit Court case, isn't it? It is. That's correct, Your Honor. Even if Google can't be liable under the VPPA, we believe they can be liable for intrusion upon seclusion. To get to the other VPPA question, which is whether there's been the disclosure of person identifiable information, you can find where we allege the disclosure in paragraph 143. And there is no doubt that four things about this list of disclosures is true. One, they uniquely identify each child plaintiff who is a registered user of the Viacom children's services. Help me out with that. How does Google disclose information? You mean Viacom discloses it to Google? Viacom, yes. They do it through cookies, the placement of cookies that Viacom puts code on their website to have these communications sent to Google. And the code on their website discloses the plaintiff's username, their gender, their age, their IP address, their browser fingerprint, a unique cookie identifier that Google admits in their words that it uses to identify Internet users. So you're saying that Viacom discloses to Google a specific name? They disclose the username. But it's clear from the statute itself that a name is not necessary. And I think all the cases, all the district court cases have held as much. All right. What do they disclose besides a username? What personally identifiable information? Well, Your Honor, the entire suite of information we believe is personally identifiable because it uniquely identifies each particular... What is the suite of information? Okay. Gender, age, IP address, browser fingerprint, a unique cookie identifier that Google says it uses to identify Internet users, a unique device identifier, which identifies the device they're using, the IP address identifies where they're sending the communication from, and all this combined is the name of the video. But how does that personally identify an individual? As in the genesis of the Video Privacy Protection Act clearly identified Judge Bork as the person who was the subscriber of a number of videotapes and it was very easy for the newspaper to put two and two together. Well... But how does Google put two and two together in this case? Well, Judge Bork, that was a family video rental account, first of all. And Mikas is going to talk about... But it's instructive, especially in light of the question of Judge Vann and Twertman, it's very... it's instructive. How do you end up with personally identifiable information with all that massive data that Viacom is sending to two things? Well, one, you can look to the legislative history and the definition. The definition was purposefully left open-ended by Congress and the legislative history is clear that it was purposefully open-ended. That it was open-ended with respect to what type of data you can use to identify a specific person and that specific person's viewing history. But it wasn't open-ended that it targeted at protecting the identification of a particular person. I think what my colleague is asking about is how does this suite, that's your words, identify a particular person? A group of the material you've identified, identify a device? A group of the items you've identified, identify a group of people but not a particular person? And if I'm misunderstanding, Judge Wentz, is your question, I think that's what we're trying to determine is how does any of that identify a particular person? It uniquely identifies that particular internet user. And if I could get to... the word in question is identifiable and there's a suffix on that. Able means capable of. It speaks to the potential of information. Not just that it is an identifier. There's a difference between an identifier and identifiable. And this court recognizes that distinction in Rule 113.12. This court requires parties to remove personal identifiers from pleadings. Those identifiers include financial account information and home addresses. And the identifiers used at issue in this case are actually more identifying than the ones that this court has in its own suit listed as identifiers. So you think that Google is capable of determining precisely who Viacom's subscriber is on the basis of the information? Absolutely. Now you allege that. They actually are doing that. What part of your complaint do you allege that Viacom has disclosed information that Google has in fact used to identify a particular person? The statute prohibits the disclosure of personally identifiable information. Not the disclosure of personally identified information. Just based on what you just said, I guess Google is off the hook then. Because they didn't disclose information, they received information. They're the recipient. But we think they can be liable for intrusion upon seclusion as well. Okay. That's a different statute. But in terms of the Video Privacy Protection Act, you're pretty much giving up on Google's liability in that case. Your Honor, I would not give up on Google's liability. We think Dirkus v. Bureau of Ruminate gets it right. I think that's what you just said. No. No, Your Honor. We would not give up. We believe that Dirkus v. Bureau of Ruminate gets it right. But they can still be liable for intrusion upon seclusion. But they didn't disclose the information. They received information. They did receive it. And we believe a recipient should be and can be liable under the VPPA based on the language of the statute. I understand you might disagree with that conclusion, Your Honor. We also believe they can still be liable under intrusion upon seclusion. Okay. Your time is really, really fast. It is moving fast. And so let me get to the intrusion part. And that is, the question is whether we've alleged behavior that's highly offensive. And we've alleged the unauthorized taking of electronic information from children. We think that taking something there's another word for it. It's called theft. Theft against children is something that a reasonable person could find to be highly offensive. And there are three cases in which unauthorized taking of electronic information from adults was found potentially to be highly offensive enough to go to a jury. There's Opperman v. Path in the Northern District of California where the information at issue was the plaintiff's contact list. There's the Google case that this court just decided last month. And there is Elling v. Monmouth Hospital, a case out of the New Jersey that involved the access to the plaintiff's quasi-public place. It's just the taking of the information actionable? As opposed to what you do with the information? Yes. Intrusion upon, the case on intrusion upon seclusion is clear that it is the taking itself that is actionable regardless of what. Will there be an intrusion upon seclusion under New Jersey common law if there's no violation of any federal or state statute? Yes. And that's because to intrude upon this, they're intruding upon the plaintiff's private communications. The plaintiff's are private, are children, and there's not consent there. For example, in the Opperman v. What part in that is highly offensive? Excuse me, Your Honor, I didn't hear the question. What is highly offensive? What part of it, what do you claim is highly offensive under New Jersey common law? The unauthorized taking of electronic information. And that is based on, there are cases involving adults. Opperman v. PATH, Viacom in their note regarding the Google cases, look, there's no big difference between California intrusion law and New Jersey intrusion law. And in Opperman v. PATH, I don't believe the court found any violation of a statute, but they did find that the unauthorized taking of electronic information from adults was potentially highly offensive, enough so that it could get to a jury. Mr. Butler, thank you very much. Thank you, Judge. You save time for rebuttal, did you? Yes, I did, Your Honor. Mr. Butler? Your Honor, I will take three minutes. May it please the court? I'm speaking on behalf of Amicus Electronic Privacy Information Center, and today I'm focused on one issue, which is the interpretation of the lower court of the term personally identifiable information in the Video Privacy Protection Act. Now, this term is a key term for federal privacy laws, and the lower court has fundamentally misunderstood the nature of personally identifiable information. As my colleague mentioned, the focus of the statute is on identifying users in connection with a video request. And identifying an user, being able to link or trace them to particular activities. Now, there are three reasons why this court should overturn the interpretation of the court below. The first is because unique persistent identifiers of the type in this case are akin to an address, a phone number, a social security number, in that they connect a particular person with particular activities. Second is because unique persistent identifiers are used by companies to trace and profile Internet users. One of your theories, or the plaintiffs who you're supporting's theories, is that even if this information in Viacom's possession alone could not identify the user, the particular person behind the keyboard, the fact that Google allegedly has this access to all this information is sufficient for us to conclude that this creates these categories of identifiers. That's what I understand your argument to basically be. And if that's the argument, doesn't it mean something becomes personally identifying information only insofar as the person who receives it can do something with it, but the same data in the less sophisticated is not? And how does that give notice to the person in possession of the data? If your theory is, if the party who gets it has the capacity to do something with it, it becomes personally identifiable information. But if the entity doesn't, it's not. Sure, Your Honor. So just to clarify our position, our position is that unique persistent identifiers of the type in this case, IP addresses, unique device identifiers and browser fingerprints, are personally identifiable information in the Internet context, regardless of the recipient. And that is because that information is traceable and linkable to the user. Linkable. Is there an allegation in the complaint that says it's been linked? My colleague has spoken to the complaint allegation specifically, but I will reiterate or I will reemphasize that the statute is focused on the disclosure of personally identifiable information, and Congress was concerned with the ability of companies to create these profiles. You can see in the Senate report, Senator Leahy focusing on the ability of companies to profile a person, what they buy, the programs they watch. So it's the ability of companies based on identifiable information that can link a person to, that can connect a particular user with the information that they've sought. But no one has pledged that that has actually happened yet, have they? They've alleged that the company, the defendants in this case, have disclosed that personally identifiable information, which is what's required under the statute. But nobody has pledged that anyone has yet actually been identified, right? No, Your Honor, but that's not required under the statute. The statute does not require that an individual be identified based on information disclosed. The statute requires that the information disclosed be personally identifiable. I think this is from Hulu, a statement here. Let me get your take on it. That could hypothetically be reverse engineered to identify someone was not enough. Sure, Your Honor. And this brings me to my final two points. One is that the data in this case was not anonymous. And that is why the lower court fundamentally misunderstood the nature of the data and of the definition of personally identifiable information. Anonymous data is typically, in the technical context, is data that has been aggregated and has been stripped of any information that is traceable or linkable to a particular data subject. So this, for example, might be There were no names or addresses attached to the data, were there? There were addresses, Internet addresses. I mean addresses and device addresses are essentially the addresses of the Internet. There is one to an address or a number. Yeah, but that information actually requires other information to identify a specific person, doesn't it? It identifies a specific person in the sense that it distinguishes them, it allows them to be linked and tracked over time, which if you look at the defendant Google's brief, they show on page 9 that that is exactly how they use these Internet identifiers to track the activities of users across different websites. So a name is a way to identify an individual, but it is not the only way to identify an individual. And in the Internet context, it's not even a particularly useful way to identify the individual. We have to get over to Mr. O'Neill. Yes, Your Honor. Because we believe that this is exactly the type of information Congress ought to regulate in the VPPA, we ask this Court to overturn the interpretation of the law. Thank you, Mr. Butler. May it please the Court, David O'Neill for Appellee Viacom. Your Honor, the information alleged to be disclosed in this case consists of anonymous computer codes, IP numbers, website file paths and browser information that exists for the purpose of directing information and data packets through the complex infrastructure of the Internet. That information is not intended to identify any person. It is not alleged to have actually identified any person, and we heard confirmation of that this morning. And indeed, there's no allegation that any human being ever even sees this information. Did you say seized? Ever sees, ever lays eyes on this information. This is information that is traded between computers for the purpose of retrieving content from a Web server and displaying it on a computer screen. But you collect, Viacom collects personal information from subscribers, doesn't it? No, Your Honor, Viacom does not. Viacom collects, it is alleged. Well, you collect the birth date, you collect gender, you collect other information. That's not personal information? Under the BPPA, no, that is not information which identifies a person. I think we really need to focus on the actual statutory language here, and the statutory language is PII for purposes of BIFA is information which identifies a person. You don't think that a full name, a birth date and gender are not personal information? A full name certainly is, Your Honor, and that's a point that I'd like to correct the record on. The appellants have said that Viacom discloses the username. Well, that's true, but if you look at the registration form, Viacom specifically says do not use your real name. Right. It's a fanciful name that is specifically intended not to be identified, and the only other two pieces of information that are alleged to be collected by Viacom here are the gender and the birth date, and those two pieces of information do not identify a person. Doesn't the BPA have a principle under which information collected for one purpose may not be used for a different purpose without the individual's consent, and isn't that what Viacom is doing here? No, Your Honor, I think there are statements to that effect in the congressional record. Yes, there are. Now, aren't you violating that? No, Your Honor, the Viacom website does not indicate in any way what that information is gathered for, but I think the fundamental purpose, the fundamental point here is, again. Well, wouldn't a person, a child in particular, using that Viacom think it's only going to be used for Viacom? Your Honor, I don't think that that, first of all, I don't think that that is the relevant question, and I also don't think that there's any allegation in the complaint concerning that whatsoever. Judge, if I may say. Oh, that information collected for one purpose is being used for a different purpose. You're saying that's not in the complaint? Your Honor, I'm saying that is not what the VPPA addresses and it's not what the VPPA prohibits. With regard to the New Jersey statute and whether the information, whether your conduct, I mean Viacom's conduct was highly offensive. There is a screenshot here that is provided in one of your pleadings. I think it's the plaintiff in this case, and that screenshot says the following. We don't collect any, any as in capital letters, any personal information about your kids. This is preceded by the term, hey, grownups, we do not collect any personal information about your kids, which means we couldn't share it even if we wanted to. But, in fact, you do collect personal information about kids, don't you? Again, Your Honor, for purposes of VIPPA, the answer is no. Age and birthday are not personal identification. I guess that depends who you ask. If you were to ask me is your birthday personal information, I would say why do you want to know? And if you ask me what my gender is, well, maybe so, you could tell. But I may not want to give you my birthday. I also don't want to give you my name. Aren't those personal – isn't that personal information? For purposes of VIPPA, and then I'm going to talk about the intrusion claim, but for purposes of VIPPA, the answer is no. Personally identifiable information under VIPPA is information which identifies a person. What if I were to say I think that's personal information? I'm going to disagree with you, and I'll say that's personal information. Your Honor, I – And you gave me an assurance that you were not going to collect that information. Wouldn't that be highly offensive? No, Your Honor. If a court were later to disagree, and I think it is very clear under the – Well, let's say a court agrees with me. I'm saying if a court – this court were later to disagree, that certain information is personally identifiable information, even though the relevant statutes here do not define it as personally identifiable information. And, Your Honor, I think on this point the Children's Online Privacy Protection Act is very relevant. Congress specifically addressed this question of children's privacy on the Internet, and Congress passed a statute specifically directed to that. That's COPPA. Congress then gave federal regulatory authority to the Federal Trade Commission to implement that statute, and the FTC in turn has issued very detailed regulations on this, Your Honor. What does it have to do with collecting birthdays and gender and names? Because under COPPA, at the time of this complaint, the allegations in this complaint, birthdays and gender were not personal information under COPPA. So a federal agency had specifically looked at these issues and had concluded that that should not be considered personal information. So Viacom was entirely accurate and truthful in saying we do not collect personal information because the statutory regime and the regulatory regime, which again was specifically intended to address these issues, said that that was not personal information. And, Your Honor, very briefly, I would like to make one final point that actually is unrelated, but I did want to bring it to the Court's attention. On page 37 of our brief, we argue that the Court should not exercise supplemental jurisdiction over any remaining state law claims if the Court dismissed all the federal law claims. After reviewing Google Cookie and after further consideration, we believe there would likely be diversity of jurisdiction over any state law claims under CAPPA in any event. So we would urge this Court to affirm the dismissal of the state law claims for failure to state a claim, as the District Court did, and not for lack of jurisdiction. Thank you, Mr. Mueller. Mr. Rubin. Good morning, Your Honors. Mr. Rubin. May it please the Court, Michael Rubin for Google. I'd like to address the three claims that the Court has instructed us to address. With respect to the BPPA, I think as has been made clear thus far this morning, that claim only lies against a videotaped service provider that has disclosed information. Google is not a videotaped service provider, and there is no allegation of the complaint that has disclosed anything. And there has to be a knowing disclosure of PII. That claim can't be asserted against Google here. With respect to the New Jersey Computer-Related Offenses Act, we haven't heard anything about it yet this morning, but it requires a pleading of damages to business or property. It is more narrow than the analogous California claim that this Court addressed in Google Cookie, which permits also a pleading of loss. This Court found no damages or loss in that case. The allegations in the complaint here are identical, often verbatim. There's no claim there either. That brings us to intrusion upon seclusion. There are three elements under New Jersey law there. None of those elements have been stated in this case as against Google. First, there are no allegations of Google's intent. Nothing from which the Court could even infer that Google acted with a tortuous intent. Well, Google upheld a claim for intentionally disabling cookie blockers, didn't it? And aren't you intentionally tracking children's activity without their consent? How is this different? The Google Cookie case held that, under the highly offensive prong of the intrusion claim, held that there had been plausible allegations inferable from the allegations in that complaint, that there was a statement that was deceptive made by Google, at the same time that Google was overriding an activated cookie blocker. Right. In this case, there's no... And that was intentional. Well... Nobody did that by accident. There's no allegation of intent there, but there was an inference of intent from that. All right. Now, aren't you intentionally doing what you're doing here? Well, under this Court's interpretation of the relevant restatement provision, intent has to be with respect to both the act and the intrusion. So I don't think that anyone would quibble with the fact that the cookies are placed intentionally. That's an automated system. But the allegations at Viacom permitted Google to do so. And I don't think there can be an inference of any tortious intent from that. But you're intentionally tracking the children's activities, aren't you? I mean, the information and so forth. But there is nothing under Google Cookie that could lead to a conclusion that there's anything tortious there. Google Cookie made very clear that placing a cookie and serving advertising in connection with that is not enough to state an intrusion claim. There has to be something more. And there is nothing more in this case that comes... Well, now let's talk a little bit about the New Jersey Constitution and the New Jersey recognition of informational privacy. Wouldn't that guide our analysis here? I think it does, and I think it guides it to the same conclusion I just articulated. If you look at State v. Reed, for example, State v. Reed addresses a question that we've touched upon a little bit this morning around IP addresses. And it talks about a limited informational privacy right under the New Jersey Constitution, which is not a claim asserted in this case, but a limited privacy right in an IP address, but only in the context of state governmental requests to internet service providers, because those internet service providers have the information to unmask what the IP address is. So the actual privacy right is in the subscriber information that's sitting with the ISP. There is a recognition in that case, quite clearly articulated, that the IP address actually flows around the internet to direct traffic, and in the hands of all of the other people to whom it's flowing, it's actually not meaningful to uncover anyone's identity. Can we go back to your... you were talking about the first element of the intrusion claim is whether or not there was an intrusion. And I believe you said that the cookies were placed with Viacom's permission. Indeed. But the person complaining about the intrusion isn't Viacom, it's the user. How does that... how does your analysis about Viacom's permission have anything to do with how the user might feel about this placement of the cookie, allegedly without their knowledge? All right. Well, let's... it's a very good question. So the first element is actually Google's intent. This is a claim against Google. The second element, I think, is the intrusion question, but they often conflate a bit. We have to look at Google's intent here. With respect to the allegations in this complaint, Google's alleged to have been an advertiser, to have been doing something back in 2012, so 2012 complaints, behavior about 2012. The allegation is that Google is one of many here, one of many on, frankly, on the Nick.com site, but also that Nick.com wasn't even itself special, that this was one of many websites and that this was how third-party advertising was done. And if this is Google's business, Google's in the business of doing this, Google's certainly entitled to rely upon the permission of the sites that it deals with for permission to act. And if a site says, here, you're permitted to place a cookie and operate, that is the appropriate intent. Google is a member of the Interactive Advertising Bureau. Indeed. And that bureau has a code which prohibits members from collecting personal information from children under the age of 13, which is exactly what Google was doing. How does Google's violation of the code figure into whether this was highly offensive or not? There was no violation of the code. The district court, in its first opinion, recognized that, and it gave plaintiffs a right to amend their complaint. Your answer to Jeff Schwartz seemed to suggest that Google was collecting information. There was no personal information. I'm happy to explain exactly what was received from plaintiff's browsers. It's at top page 35 of a plaintiff's complaint. There was no personal information. I really would be more than happy to walk through exactly what's there if it would be helpful. It was not personal information. What the Interactive Advertising Board regulation says, or commitment says, is that Google will comply with COPPA, and back in 2012, at the time these complaints arose, COPPA didn't apply to entities like Google. It was amended, and in the middle of 2013, it did apply, and there's no allegation in the case that COPPA was ever violated, and there couldn't be any such allegation because it never was. And the definition of personally identifying information under COPPA is not the same as it is under the VPPA. The Hulu case makes that very clear. There's an attempt, I believe, by plaintiffs in this case to conflate some very different concepts, but there's no allegation of wrongdoing by Google in this case whatsoever, and this case is nothing like the Google cookie case in that regard. Thank you, Mr. Wall. Thank you very much for your arguments. Mr. Barnes. Oh, I'm sorry. Thank you, Your Honor. Mr. Wall. Thank you, Mr. Rubin. You are here on the video Privacy Protection Act? Yes. Go ahead, Mr. Wall. Jeff Wall on behalf of the Chamber. May it please the Court. Judge Chesler issued what I think are two very thoughtful opinions in the case, but I think he summed it up best at the end of the second one where he said, look, plaintiff's amended complaint is just trying to put square pegs into round holes, and they may or may not be raising issues that merit legislative and executive attention, but they don't have a legal hook for their claims. Now, EPIC asked for one. In 2012 when Congress was amending the VPPA, EPIC's executive director went before the relevant Senate subcommittee and in testimony available on EPIC's website said, look, Congress, you ought to amend the definition of personally identifiable information in VPPA to include IP addresses and account identifiers. Now, whether or not that was a good idea, and EPIC obviously believes that it was, Congress didn't take them up on that suggestion. There is a policy tradeoff here. Many of the content providers who provide these videos and other content online for free rely on the revenue they get from this tailored advertising in order to be able to offer that content for free. And think about how many videos we watch online for education, for enrichment, for entertainment, and Congress had to face that tradeoff. Now, EPIC thinks that you should have, you know, they want to sacrifice some informational access in order to get a little bit more of what they think is valuable privacy, and that may or may not be a difficult question, but as Judge Chesler said, it's a question that belongs before legislative and executive bodies, and what Congress hasn't done is resolved that ongoing and active policy debate in the context of the VPPA. Do you believe that they deliberately did not specify whether or not an EPIC defendant needs to be a videotaped service provider or whether it's limited to that? Judge VandenForp, we haven't taken a position on that question. All I can tell you is that in the face of what the plaintiffs and EPIC acknowledge is a dispute in the case law between a district court decision that goes their way and a circuit court decision that goes the defendant's way, when Congress amended VPPA, it did not expand the definition of a videotaped service provider to reach recipients of information as opposed to those who knowingly disclose. I'm not aware of why Congress did or didn't do that, but they did not expand the definition in a way that would reach the Googles of the world. EPIC is sort of an old statute. It was really passed back in the days when people were constantly checking out these videotapes and so on and so forth, but that's really no longer the case. You just don't see that much anymore. I just have to wonder whether or not VPPA includes people other than videotape providers, you know? I don't think it does, and I will say, Your Honor, that on the personally identifiable information prong, there are certainly cases where you've got to take a statute designed for one problem and deal with new concerns that fit within the language, and that, the Chamber would submit, is a very legitimate practice of courts. But what the plaintiffs in EPIC are asking you to do is really something quite different, and to expand the language of the statute to extend beyond information that links up a person with a particular video transaction and reach IP addresses and account identifiers and the sort of thing that might point you toward a browser or might point you toward a router, but wouldn't point you toward a specific identifiable person, and I think that's why plaintiffs struggled this morning to say whether they have alleged that anyone has been identified, and they haven't, and they can't, because the information here by its nature does not, as it was disclosed from Viacom to Google, identify any particular person. Since you're addressing this issue, when VPPA addresses videocassette tapes, you have no problem agreeing that what Viacom was providing was videocassette tapes or similar video visual materials? Judge Fuentes, the parties haven't briefed that. I will say I think that there is a serious question, and Viacom raised it below, and as I understand it, the district court resolved that issue against them, and that's not the primary issue on appeal. I think that there is a very difficult question there about whether these online videos are videotapes or similar audio visual materials within the meaning of VPPA. That's not the primary issue here, and the parties haven't briefed it. I do think it's a serious question. Okay. Thank you very much, Mr. Wall. Mr. Barnes-Rebuttal, maybe you can talk about that representation that Viacom made on a website, a direction to grownups that we don't collect any personal information about your kids. I believe this is from your briefing. I think it's in paragraph 103 in our complaint. We provide a sample, or not a sample, but the sign-up form. Was Viacom collecting personal information? Yes, and I think you can see it from the form. What is the personal information that was collected? Well, there's the birth date and there's the gender. In addition to that, Your Honor, there's the suite, as I've called it, of information as well. Because you're asking about what personal information is collected, I think the most important point I want to make about the VPPA is that every federal fact finder to have taken evidence and heard from experts on this issue of personally identifiable information has concluded that the type of data disclosed in this case is, in fact, personally identifiable. Help us. What is the type of data that was disclosed in this case? So IP address, unique cookie identifiers, unique device identifiers. All of those things have been found by various executive branch agencies to be personally identifiable information. But we're in the VPPA, and we're stuck with the statutory definition given to us by Congress for that law. The things you've just identified identify on their own devices. They don't identify people. So how does that get at the personally identifiable information that the VPPA was directed at? Well, Your Honor, the federal fact finders would disagree. I want to talk about the differences between... And who are the federal fact finders, these executive agencies issuing a different statute? So executive agencies, that would be under HIPAA, FERPA, Gramm-Leach Financial Modernization Act, and COPPA. And the distinction between those statutes and this one is that Congress decided they were going to protect privacy  and they left it to the agency to define it. But isn't that a super salient point for us to consider where Congress could have in 2012 amended, expanded, adopted in some way some of this other activity, chose not to, and didn't delegate it? Shouldn't we presume from that that Congress intended to hold within itself the authority to change the definition? No, they left the definition open to keep pace with technological change. Instead of telling American consumers they have to go petition the executive branch to protect their privacy rights, they gave American consumers the right to bring a claim in federal court. And they left that definition open to keep pace with technology. And I would beg you to read the full legislative history. Because there's a great quote from Sarah Leahy who asks, who is to say that someday this information cannot be compiled and elaborate dossiers on individual activity prepared? Yeah, but shouldn't we judge by the here and now, not by what might happen someday? I'm sorry, Your Honor, I didn't hear you. Shouldn't we judge by the present time, not by what might happen in the future? Do you mean in regards to that? You're concerned about possible future disclosures of information. And, Judge, that's a good question. I think it gets to the issue of the difference between the word identifiable and identifier. And the use of the suffix able really does mean something different than the use of identifier or identifies. And the district court held that you have to have data that identifies in and of itself. But, Your Honor, that's not what the statute says. 2710B1 prohibits the disclosure of personally identifiable information. Yeah, at the time of disclosure, but not some future point, 10, 20, 30 years. I mean, you know, well. Well, Your Honor, and you make a good, is it identifiable to Google and Viacom? Yes, and you don't have to take our word for it. Take Google's word for it and Viacom's word for it. In the Viacom versus YouTube case, they were involved in litigation, and Viacom publicly said that usernames, IP addresses, and visitor IDs are personally identifiable information. And they're not real names, by the way, are they? No. They're handles or whatever term you want to use. That's right. In some cases, they might be. In some cases, they might be, but you might not even know. That's correct. I think that's a correct assertion, Your Honor. Okay. It's not just Google that receives this information. Google happens to have probably the largest market share. But what about all the other entities that receive this kind of information? If Google were to side with you, all of those entities besides Google that sends ads out would be liable. Is that accurate? Depending on the type of information disclosed, the exact type of data disclosed. So the same data? Yes. Depending upon the defendant, yes. But a lot of other defendants in the same space as Google. It sort of includes Amazon, too, I seem to be getting. Well, Amazon doesn't do this, Your Honor. Oh, it doesn't. And here's the point on that, is that the defendant Viacom and other VTSPs can actually disclose this information. But they have to do it in a certain way. They have to get informed written consent. There is a limiting principle in the VPPA. It's called consent. And that's all they have to do. Netflix went to Congress in 2012 because they knew it applied to the Internet in their business model and got an easier way to obtain consent over the Internet. Netflix doesn't do this either, Your Honor, because they understand that this applies to the Internet. Mr. Barnes, thank you very much. Thank you, Your Honor. Thank you, everyone, for your arguments. We'll take the case under advisement. I'm going to go pee, sis. I'm going to hang up. Thank you.